IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **VANESSA INGRAM, individually and as** | § | |
| **Executor of the Estate of Roy Ingram,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:13-CV-4037-L** |
| | § | |
| **BENEFICIAL FINANCIAL, INC.,** | § | |
| **successor by merger to BENEFICIAL,** | § | |
| **TEXAS, INC.; and HOUSEHOLD LIFE** | § | |
| **INSURANCE COMPANY,** | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court are Beneficial Financial Inc.'s Motion for Summary Judgment (Doc. 17), filed June 17, 2014; and Defendant Household Life Insurance Company's Motion for Summary Judgment (Doc. 7), filed June 25, 2014. After considering the motions, responses, replies, evidence, pleadings, and applicable law, the court **grants** Beneficial Financial Inc.'s Motion for Summary Judgment (Doc. 17); **grants** Defendant Household Life Insurance Company's Motion for Summary Judgment (Doc. 7); and **dismisses with prejudice** this action.

**I.     Factual and Procedural Background**

In her Original Petition ("Petition"), which is verified, Plaintiff asserts the following claims: (1) violations of the Texas Insurance Code, (2) breach of contract, (3) negligence, (4) negligent misrepresentation, (5) unjust enrichment, (6) breach of the duty of good faith and fair dealing, (7) violations of the Deceptive Trade Practices Act ("DTPA"), (8) violations of the Texas Debt Collection Practices Act ("TDCPA"), and (9) intentional infliction of emotional distress.

Additionally, Plaintiff seeks a declaratory judgment, an accounting, actual damages, exemplary damages, damages for mental anguish, attorney's fees and costs.  Plaintiff's claims are based on her contention that: (1) she and her husband purchased Credit Life Insurance from Defendant Household Life Insurance Company ("Household") in May 2007 to pay off their mortgage in the event of her husband's death; and (2) the insurance policy was subsequently canceled by Defendants without written notice. Plaintiff alleges that, after her husband died in April 2008, she contacted Beneficial Financial I Inc. ("Beneficial") in June 2009 to inquire about life insurance proceeds and was informed that her husband did not have Credit Life Insurance. Plaintiff alleges that she stopped making mortgage payments in 2010, after being informed that she was not on the mortgage and Beneficial refused her requests to put the mortgage in her name or respond to the documents she submitted regarding the insurance policy. According to the Petition, Beneficial applied for a court order to foreclose on the property at issue. Plaintiff contends that the posting of the property for foreclosure was unlawful.

Plaintiff originally brought this action in County Court at Law No. 2, Dallas County, Texas. The case was removed to federal court on October 7, 2013.  On June 17, 2014, Beneficial filed its summary judgment motion.  On June 25, 2014, Household filed a motion for judgment on the pleadings.  The court converted Household's motion to a summary judgment motion and directed the parties to supplement their briefing and evidence  in accordance with Federal Rule of Civil Procedure 56.  Plaintiff filed separate responses to the summary judgment motions but did not respond to all of Defendants' contentions regarding her claims.  Defendants contend that Plaintiff's failure to respond with respect to certain claims constitutes a waiver of those claims.

## II.        Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute

d refund was ever sent to [her husband]." Pl.'s Resp. 6-7. To establish that the insurance premium

as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas

Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine"

if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary

judgment, the court is required to view all facts and inferences in the light most favorable to the

nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift

Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility

determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v.

Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the

nonmoving party's case, the party opposing the motion must come forward with competent summary

judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus.

Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden

of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative

defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense

to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)

(emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact

to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita*, 475 U.S. at

587.  (citation omitted).   Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).   Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*.; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

Plaintiff responded to some but not all of Defendants' contentions regarding her claims.  This failure, of course, does not permit a court to enter a "default" summary judgment.  *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). When no response is filed, such failure does permit the court to accept as undisputed the evidence set forth in support of a movant's motion for summary judgment. *Id*.  Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence."

*Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Allegations in a verified complaint, however, may serve as competent summary judgment evidence. *Stauffer v. Gearhart*, 741 F.3d 574, 581 (5th Cir. 2014); *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003). As noted, Plaintiff's pleadings in her Petition are verified. She may therefore rely on the facts alleged in her pleadings on summary judgment. *Id.*

## III.   Undisputed Facts

1.    In July 2001, Plaintiff and her husband purchased property located in Dallas County and signed a note and deed of trust on the property with Beneficial.

2.    In 2006, Plaintiff and her husband paid off the note on the property.

3.    On May 23, 2007, Plaintiff and her husband obtained a home equity loan from Beneficial to help pay bills after Plaintiff's husband became ill. In conjunction with the home equity loan, Plaintiff and her husband executed a security instrument payable to Beneficial to secure payment of the note. Plaintiff's husband also applied for life insurance, which would have paid off the loan in the event of her husband's death.

4.    On June 25, 2007, Plaintiff's husband was notified by letter that his application for life insurance was denied and that a refund check for the initial premium paid would be mailed to him under separate cover.

5.    Plaintiff's husband died on April 30, 2008.

6.    In June 2008, Plaintiff inquired about the insurance policy and insurance proceeds, and was informed that there was no life insurance policy.

7.    Plaintiff continued making monthly payments on the home equity loan until 2010.

8.      Beneficial sent Plaintiff letters regarding her past due account.  Plaintiff in response retained

counsel, who made a formal claim on April 20, 2012, to Household for benefits under the

insurance policy.  On November 20, 2012, Plaintiff's counsel also disputed in writing to

Beneficial the validity of Plaintiff's debt based on the insurance policy. On April 24, 2012,

Household denied Plaintiff's claim for benefits and explained that no policy on Plaintiff's

loan existed; that the application for insurance was denied by its underwriter by letter dated

June 25, 2007; and that a refund check in the amount of $65.62 for the initial premium paid

was issued June 28, 2007.

9.      On July 19, 2013, Beneficial filed in state court an Application for Court Order Allowing

Foreclosure on the lien securing Plaintiff's home equity loan.

10.     Plaintiff has continued to reside in the property without making payments since 2010.

**IV.    Analysis**

**A.      Texas Insurance Code**

Plaintiff asserts claims under sections 541 and 651 of the Texas Insurance Code (the

"Insurance Code") against Defendants.  Beneficial contends that Plaintiff's Insurance Code claims

fail because Articles 541 and 651 do not apply to it, and there is no evidence that it is subject to these

provisions.  Household similarly contends that there is no evidence that it is subject to section 651.

Plaintiff does not address Beneficial's contention in her response to Beneficial's summary judgment

motion. With respect to Household's motion, Plaintiff responds as follows: "Beneficial is an

insurance Premium Finance Company and a debt collector. Beneficial was the agent for Household.

Therefore, the claims against Beneficial are imputed onto Household. By failing to deny coverage

of the claim within a reasonable amount of time, Household violated section 541.060(4)(a)."  Pl.'s

Resp. to Household's Mot. 11 (citing Pl.'s App. 22-23).  For support, Plaintiff cites to an Optional

Credit Insurance Disclosure in which Beneficial is listed as the "LENDER," and Plaintiff and her

husband are listed as "BORROWER(S)."  Pl.'s App. 22.  The disclosure indicates that if Plaintiff

and her husband purchase insurance, the life or disability insurer will be Household.

Section 541 of the Insurance Code applies to "[a]n individual, corporation association,

partnership, reciprocal or interinsurance exchange, Lloyd's plan, fraternal benefit society, or other

legal entity engaged in the business of insurance, including an agent, broker, adjuster, or life and

health insurance counselor."  Tex. Ins. Code § 541.002(2).  Section 651 applies to "insurance

premium finance compan[ies]" and regulates the cancellation of insurance policies.  *Id.* §§ 651.001,

651.161.  "Insurance premium finance company" means:

> (A) a person engaged in the business of making loans under this chapter by entering
> into premium finance agreements with insureds or prospective insureds;
>
> (B) a person engaged in the business of acquiring premium finance agreements from
> insurance agents or brokers or from other insurance premium finance companies; or
>
> (C) an insurance agent or broker making loans under this chapter who holds premium
> finance agreements made and delivered by insureds that are payable to the agent or
> broker or to the agent's or broker's order.

*Id.* § 651.001(3) (A)-(C). "Insurer" is defined as:

> [A]n entity organized or authorized to engage in the business of insurance under this
> code as a capital stock insurance company, title insurance company, reciprocal or
> interinsurance exchange, Lloyd's plan, fraternal benefit society, mutual or mutual
> assessment company of any kind, statewide mutual assessment company, local
> mutual aid association, burial association, county or farm mutual insurance company,
> fidelity, guaranty, or surety company, or trust company.

*Id.* § 651.001(5).  "'Insured' means a person who enters into a premium finance agreement with an

insurance premium finance company."  *Id.* § 651.001(4).

Plaintiff's conclusory statements that "Beneficial is an insurance Premium Finance Company and a debt collector," and "Beneficial was the agent for Household" are conclusory. Moreover, there is no evidence that Beneficial is engaged in the business of insurance. Likewise, there is no evidence that either Defendant qualifies as an insurance premium finance company, as that term is defined by Section 651.001. Plaintiff has therefore failed to raise a genuine dispute of material fact as to these issues. As a result, Beneficial is entitled to judgment on Plaintiff's claims under sections 541 and 651 of the Texas Insurance Code, and Household is entitled to judgment on Plaintiff's section 651 claim.

**B.      Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing**

Plaintiff alleges that Defendants breached the insurance policy purchased by her and her husband by refusing to process her claim and failing to pay the insurance proceeds after her husband's death. Plaintiff's duty of good faith and fair dealing claim is also premised on her allegation that Defendants failed to process her claim and pay the proceeds under the insurance policy.

Beneficial contends that Plaintiff's contract and duty of good faith and fair dealing claims against it fail because there is no evidence that Beneficial ever issued an insurance policy to Plaintiff. Household similarly asserts that there is no evidence that an insurance policy exists. Household presented evidence that Plaintiff was notified on June 25, 2007, that the application for insurance was declined, and that the single premium paid as part of the June 2007 payment was refunded when the application for life insurance was denied.

Plaintiff did not respond to Beneficial's arguments as to these claims. In response to Household's motion, Plaintiff contends that while Household has presented evidence of a letter

declining the insurance application and refunding the initial premium, this evidence does not show that she actually received the letter and refund.  Plaintiff further asserts that her bank statements show that no refund was received.  Additionally, Plaintiff contends that Household is barred by estoppel from denying that it sold Plaintiff and her husband a life insurance policy.  Alternatively, Plaintiff contends that her payment of an initial premium constitutes partial performance such that the court should enforce the insurance policy.

Household replies that Plaintiff's contentions regarding estoppel and partial performance are unavailing in light of the evidence that the one monthly premium paid by Plaintiff was refunded. Household further asserts that, contrary to Plaintiff's contention, payment of the first premium is not "strong evidence" of a contract or its terms.  Household contends that, even assuming Plaintiff is correct that payment of one monthly premium is sufficiently strong evidence, Plaintiff fails to explain why she and her husband did not make the next ten premium payments under the policy.

The elements of a breach of contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citation omitted).  The duty of good faith and fair dealing derives from the "special relationship" between the parties to an insurance contract. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697 (Tex. 1994).  Absent an insurance contract, there is no "special relationship" and no duty of good faith and fair dealing.  *Id.* at 698.

The undisputed evidence establishes that no policy was ever issued, and Plaintiff's evidence is insufficient to establish a genuine dispute of material fact as to this element.  The disclosure statement relied on by Plaintiff indicates that insurance coverage was subject to approval of the

application, and the evidence establishes that the only payment made was refunded after Plaintiff was notified that the insurance application had been denied.  While this evidence does not show Plaintiff actually received the letter notifying her that the insurance application had been denied and the first premium payment refunded, it is sufficient to shift the burden to Plaintiff to establish the existence of a contract and special relationship.  Plaintiff's contention and evidence regarding the existence of a policy and her belief in that regard, however, amount to nothing more than unsubstantiated speculation.  Plaintiff's bank statements showing no refund is likewise unavailing because the letter to her husband simply indicates that a refund check for the full amount of the premium paid would be mailed under separate cover.  Simply because there is no indication in Plaintiff's statement that the check was not deposited in her and her husband's joint account is not evidence that refund check was not sent or received, as Plaintiff or her husband could have cashed the check without depositing it in their bank account or the check may have never been cashed at all.  Regardless, such evidence is not sufficient to raise a genuine dispute of material fact regarding the existence of a valid contract or insurance policy or the type of special relationship required to support a claim based on breach of the duty of good faith and fair dealing.  Absent an insurance contract, Plaintiff's claims for breach of contract and breach of the duty of good faith and fair dealing fail.

Moreover, Plaintiff's evidence that a single insurance premium payment was made is insufficient to support her reliance on the equitable doctrines of estoppel and partial performance are misguided.  "Estoppel . . . generally prevents one party from misleading another to the other's detriment or to the misleading party's own benefit."   *Ulico Cas. Co. v. Allied Pilots* Ass'n, 262 S.W.3d 773, 778 (Tex. 2008). The elements of equitable estoppel are: "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3)

with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998).  "Promissory estoppel generally is a defensive doctrine in that it estops a promisor from denying the enforceability of [a] promise." *Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 636 (Tex. 1997).

As indicated in the case cited by Plaintiff, partial performance, like estoppel, is a well-recognized exception to the statute of frauds, which is not at issue here. "Under the partial performance exception to the statute of frauds, contracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud."  *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, no pet.). "The fraud arises when there is strong evidence establishing the existence of an agreement and its terms, the party acting in reliance on the contract has suffered a substantial detriment for which he has no adequate remedy, and the other party, if permitted to plead the statute, would reap an unearned benefit." *Id.*  "The partial performance must be unequivocally referable to the agreement and corroborative of the fact that a contract actually was made."  *Id.* (citation and internal quotation marks omitted).

Plaintiff has presented no evidence that Defendants misrepresented or concealed the status of Plaintiff's insurance application; nor is there evidence that Defendants promised to approve the insurance application submitted if Plaintiff agreed to pay the initial premium on the policy.  Plaintiff has also failed to present "strong evidence" of partial performance establishing the existence of an insurance policy.  Plaintiff has therefore not met her burden with respect to estoppel and partial performance, and, for the reasons explained, the evidence she relies on is insufficient to raise a

genuine dispute of material fact regarding the existence of a valid contract or insurance policy, or the type of special relationship required to support a claim based on breach of the duty of good faith and fair dealing. Defendants are therefore entitled to judgment on these claims.

### C.      Negligence

Beneficial contends that Plaintiff's negligence claim fails because there is no evidence it owed her a legal duty, and Plaintiff has not pleaded that it owed her any such duty.  Plaintiff did not respond to Beneficial's contention in this regard.

To establish a cause of action for negligence under Texas law, the plaintiff must prove: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by the breach.  *Boudreaux*, 402 F.3d at 540-41.  As noted above, no special relationship that would give rise to a legal duty exists in the insurance context.  Further, as correctly noted by Beneficial, Texas courts have consistently held that no "special relationship" exists between a mortgagor and a mortgagee.  *See Levels v. Merlino*, 969 F. Supp.2d 704, 717-18 (N.D. Tex. 2013) (collecting cases).  Accordingly, Plaintiff has failed to raise a genuine dispute of material fact regarding the existence of a legal duty, and Beneficial is entitled to dismissal of Plaintiff's negligence claim.

### D.      Negligent Misrepresentation

Under Texas law, the elements for negligent misrepresentation are:

(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998) (quoting *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

Beneficial contends that Plaintiff's negligent misrepresentation claim fails because there is no evidence that it made a false representation regarding the insurance policy or status of the mortgage debt.  Household similarly asserts that there is no evidence that it supplied Plaintiff with false information regarding the policy either negligently or intentionally.  The court agrees.

Plaintiff indicates in response to Household's motion that she is waiving her negligent misrepresentation against Household.  With respect Beneficial's motion, Plaintiff contends that Beneficial has failed to produce any evidence in support of its motion as to this claim or any other claim, and that Beneficial has therefore failed to demonstrate through evidence the absence of a material factual dispute.  Plaintiff acknowledges that her negligent misrepresentation claim hinges on the existence of a valid enforceable insurance policy, and the court has already determined that the evidence establishes that the insurance application submitted by Plaintiff and her husband was declined.  There is also no evidence that Beneficial's statement regarding the status of the mortgage was false, and Beneficial's refusal to "not put Plaintiff on the mortgage" does not qualify as a misrepresentation.  Pl.'s Resp. 8.  Plaintiff has therefore failed to establish a genuine dispute of material fact that Defendants made false representations or supplied false information regarding the status or existence of the insurance policy or mortgage.

Moreover, the court agrees that Beneficial's motion as to this and other claims is akin to a "no-evidence" summary judgment motion.  While Beneficial has not offered evidence to negate Plaintiff's claims, it has pointed to specific essential elements of this and Plaintiff's other claims where evidence is lacking and explained in detail why Plaintiff's claims fail.  The court therefore

concludes that Beneficial successfully shifted the burden to Plaintiff to establish a genuine dispute

of material fact with respect to the elements noted. *See, e.g., Association of Taxicab Operators, USA*

*v. Yellow Checker Cab Co. of Dallas/Fort Worth, Inc.*, 910 F. Supp. 2d 971, 977 (N.D. Tex. 2012)

("Yellow's motion . . . amounts to a "no-evidence" summary judgment motion as to those claims;

that is, Yellow points out that there is no evidence to support essential elements of Plaintiffs' claims

rather than submitting evidence negating those elements. As to all the claims Yellow challenges,

Yellow has successfully shifted the burden to Plaintiffs to establish that there is a genuine issue of

material fact so that a reasonable jury might return a verdict in its favor.") (internal citations

omitted).   Accordingly, for these reasons and because Plaintiff expressly waived her negligent

misrepresentation claim against Household, Defendants are both entitled to dismissal of this claim.

### E.   Texas Debt Collection Practices Act

Plaintiff's TDCPA claim is based on her contention that Defendants violated sections: (1)

304(a)(8); (2) 392.304(a)(10); (3) 392.303(a)(2); and (4) 392.301(a)(8) of the Texas Finance Code

by misrepresenting the amounts owed by her on a consumer debt (her home equity loan with

Beneficial) and for harassing her by attempting to collect on the debt not owed.   In response to

Defendants' summary judgment motions, Plaintiff indicates that she waives her TDCPA claim

against Household.   Accordingly, Household is entitled to dismissal of this claim against it, and the

court's discussion focuses solely on Plaintiff's TDCPA claim against Beneficial.

Beneficial contends that Plaintiff's TDCPA claim fails because she cannot point to any

instance in which Beneficial made a misrepresentation regarding her debt, charged any fees

unauthorized by the Deed of Trust in connection with the debt, or used threats, coercion or attempted

coercion by threatening an action prohibited by law.   Beneficial contends that Plaintiff merely lists

the statutes in her pleadings and broadly accuses Beneficial of violating them without any factual support. Beneficial contends that it had authority to foreclose and did so in accordance with the Deed of Trust, and any contention that it threatened to take an action prohibited by law is without merit. Beneficial asserts that, to the extent Plaintiff contends that it charged unauthorized fees in connection with her default, such fees are expressly authorized under the Deed of Trust.

In addition, Beneficial contends that Plaintiff's TDCPA claim is barred by the economic loss doctrine because:

> The independent injury rule operates to bar a plaintiff's TDCA claim where the claim is "premised on alleged misrepresentations where the actions taken by the lender were wrongful only because they violated the agreement between the borrower and lender." Thus, where a plaintiff bringing a TDCA claim asserts no other injury "apart from the economic loss of being denied modification and being foreclosed upon", his claim sounds in contract only.

Beneficial's Mot. 10 (footnotes omitted). Beneficial does not specifically explain why the economic loss rule applies to and bars Plaintiff's TDCPA claim except to state: "Plaintiff has failed to demonstrate any independent injury, nor can she." *Id.* Plaintiff responds that a common law doctrine such as the economic loss rule cannot vitiate her statutory right to bring a claim under the TDCPA. The court need not address the parties' contentions regarding the applicability of the economic loss doctrine to Plaintiff's TDCPA claims because it determines that Plaintiff's claims fail for other reasons.

### 1.     Section 392.304(a)(8)

Section 392.304(a)(8) of the Texas Finance Code prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt." Tex. Fin. Code § 392.304(a)(8). To state a viable claim for a violation of section 392.304(a)(8), Plaintiff must

demonstrate that Beneficial made a false or misleading statement that "led [her] to think differently with respect to the character, extent, amount, or status of his debt." *Miller v. BAC Home Loan Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013).

Regarding this claim, Plaintiff responds that Beneficial made the following misrepresentations: (1) Beneficial's statement to her in June 2008 that her husband did not have life insurance; (2) Beneficial's statement that she was not on the mortgage. Plaintiff asserts that such statements misrepresented the character and extent of her consumer debt because they encouraged her to continue with the loan modification process and pushed her further into debt.

Neither of these alleged misrepresentations supports Plaintiff's claim under section 392.304(a)(8). As previously noted, this section applies to misrepresentations regarding consumer debts. A life insurance policy is not a debt or a consumer debt. Further, Plaintiff's statement in her declaration that "in 2010, I was informed that I was not on the mortgage" is inadmissible hearsay and insufficient to show that Beneficial made this statement. Pl.'s App. 2 (Doc. 28-1). Plaintiff's testimony of what someone told her is an out of court statement offered as evidence for the truth of the matter asserted, *see* Fed. R. Evid. 801(c)(2), and the court finds no basis for admitting the evidence under the Federal Rule of Evidence 801(d) (2), or any recognized exception to the hearsay rule. In *Davis v. Mobil Oil Exploration & Producing Southeast, Incorporated*, the Fifth Circuit explained:

> [W]hile a name is not in all cases required, a district court should be presented with sufficient evidence to conclude that the person who is alleged to have made the damaging statement is in fact a party or an agent of that party for purposes of making an admission within the context of Rule 801(d)(2)(D).

864 F.2d 1171, 1174 (5th Cir. 1989); *see also Harrison v. Formosa Plastics Corp. Tex.*, 776 F. Supp. 2d 433, 440 (S.D. Tex. 2011) (concluding that the plaintiff failed to establish that the statements of the defendant's purported employees fell within the exception to the hearsay rule under Rule 801(d)(2)(D) because the plaintiff failed to identify the names or job titles of the defendant's purported employees.).  Plaintiff's declaration contains no information from which the court can determine whether the person she spoke with was an agent of Beneficial.  Plaintiff fails to identify by name, company, title, department and/or division, the individual who allegedly made the statement to her about not being on the mortgage. Plaintiff's declaration therefore fails to provide any competent summary judgment evidence that would allow the court to conclude that the statement was made by Beneficial or its agent.  Thus, the court does not consider the statement in ruling on Beneficial's summary judgment motion.[*]  Fed. R. Civ. Proc. 56.

Additionally, there is no evidence or allegations in the Petition to support Plaintiff's contention that the alleged misrepresentations by Beneficial encouraged her to continue with the loan modification process and pushed her further into debt.  This contention appears to have been inadvertently included in her response, as it does not relate to Plaintiffs' allegations or evidence. Plaintiff has therefore failed to raise a genuine dispute of material fact with respect to her claim against Beneficial under Section 392.304(a)(8) of the Texas Finance Code.  Accordingly, Beneficial is entitled to judgment on Plaintiff's claim under  Section 392.304(a)(8) of the Texas Finance Code, and the claim will be dismissed with prejudice.

---

[*] Evidence proffered in response to a summary judgment motion must be competent and admissible at trial.  Thus, although not raised by Defendants, the court may address *sua sponte* whether Plaintiff's summary judgment evidence is admissible.  *Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) (citing *Martin v. John W. Stone Oil Distrib., Inc* ., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam)).

**Memorandum Opinion and Order - Page 17**

### 2.    392.304(a)(10)

Section 392.304(a)(10) of the TDCPA "prohibits the practice of 'using, distributing, or selling a written communication that simulates or is represented falsely to be a document authorized, issued, or approved by a court, an official, a governmental agency, or any other governmental authority or that creates a false impression about the communication's source, authorization, or approval." Tex. Fin. Code § 392.304(a)(10).  Plaintiff does not specially address her claim under this section in response to Beneficial's summary judgment motion, but she alleges in her Petition and contends in her summary judgment response that Beneficial did not have authority to foreclose on the property and its actions in attempting to foreclose on the property were unlawful.  Plaintiff also alleges that Beneficial began sending her letters regarding her past due account after she stopped making payments.  Plaintiff, however, fails to identify any specific written communication by Beneficial that simulates or falsely represents to be a document "authorized, issued, or approved" by a governmental entity.  Plaintiff has therefore failed to raise a genuine dispute of material fact with respect to her claim against Beneficial under Section 392.304(a)(10) of the Texas Finance Code, and the claim will be dismissed with prejudice.

### 3.    392.303(a)(2)

Section 392.303(a)(2) of the TDCPA prohibits a debt collector from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code § 392.303(a)(2).  Plaintiff does not specifically address her claim under this section of the Texas Finance Code.  Plaintiff appears to contend that Beneficial violated section 392.303(a)(2) by charging fees not authorized under the

mortgage or Deed of Trust; however, there is no evidence in this regard.  Plaintiff has therefore failed to raise a genuine dispute of material fact with respect to her claim against Beneficial under Section 392.303(a)(2) of the Texas Finance Code, and the claim will be dismissed with prejudice.

### 4.    392.301(a)(8)

Section 392.301(a)(8) forbids a debt collector from using "threats, coercion, or attempts to coerce," including "threatening to take an action prohibited by law." Tex. Fin. Code § 392.301(a)(8). At the same time, however, a debt collector is permitted to "exercis[e] or threaten[ ] to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." *Id.* § 392.301(b)(3).  Plaintiff contends in response to Beneficial's summary judgment motion that Beneficial was prohibited by law from foreclosing on the property.  Plaintiff asserts that the right to accelerate and foreclose never matured because Defendant did not comply with Texas law.

Plaintiff does not explain what she means by this.  "[F]oreclosure, or the threat of foreclosure, is not an action prohibited by law when a plaintiff has defaulted on [his or her] mortgage." *Wildy v. Wells Fargo Bank*, NA, No. 3:12-CV-01831-BF, 2012 WL 5987590, at *3 (N.D. Tex. Nov. 30, 2012); *see also Burr v. JPMorgan Chase Bank, N.A.*, No. 4:11-CV-03519, 2012 WL 1059043, at *7 (S.D. Tex. Mar. 28, 2012) ("[I]t is well established that [defendant's] foreclosure on the [plaintiffs'] home after the [plaintiffs] admittedly defaulted on their mortgage loan is not an action prohibited by law.").  Moreover, as noted above, a debt collector is permitted to "exercis[e] or threaten[ ] to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." *Id.*  Plaintiff acknowledges that she took out a home equity loan with

**Memorandum Opinion and Order - Page 19**

Beneficial and  stopped making payments on the loan in 2010.  The court therefore concludes that Plaintiff has failed to raise a genuine dispute of material fact with respect to her claim against Beneficial under Section 392.301(a)(8) of the Texas Finance Code, and the claim will be dismissed with prejudice.

### F.      Texas Deceptive Trade Practices Act

Defendants contend that Plaintiff's DTPA claim fails as a matter of law because she is not a consumer.  Plaintiff did not respond to this argument by Defendants but in response to Household's motion indicates that she is waiving this claim against Household.   Accordingly, Household is entitled to dismissal of Plaintiff's DTPA claim, and the court's discussion will focus on Beneficial.

To proceed under the DTPA, a plaintiff must plead sufficient facts to establish standing to bring suit as a consumer.  *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 733 (N.D. Tex. 2011). To qualify as a consumer under the DTPA, (1) the plaintiff must have sought or acquired goods or services by purchase or lease, and (2) the goods or services purchased or leased must form the basis of the complaint. Tex. Bus. & Com. Code § 17.45(4); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981). Whether a person qualifies as a consumer under the DTPA is a question of law for the court to decide. *Olufemi–Jones v. Bank of Am., N.A.*, No. 3:12-CV-3428-L, 2013 WL 1482544, at *2 (N.D. Tex. Apr. 10, 2013) (citing *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App.—San Antonio 2002, pet. denied)).  A person who seeks only to borrow money is not a consumer under the DTPA because lending of money, without more, does not involve a good or a service. *See La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984); *see also Federal Deposit Ins. Corp. v. Munn*, 804 F.2d 860, 863 (5th Cir. 1986) (summarizing Texas law as holding that "goods" and "services" do not include intangible chattel such as stocks,

money, or loans). Likewise, the servicing of an existing loan and the request to modify an existing loan do not involve a good or service. *Olufemi–Jones*, 2013 WL 1482544, at *2 (citing *Ayers v. Aurora Loan Servs., LLC*, 787 F. Supp. 2d 451, 455 (E.D. Tex .2011)).

Plaintiff fails to explain why she qualifies as a consumer and has not come forward with any evidence that she sought or acquired from Beneficial goods or services by purchase or lease, and the goods or services purchased or leased form the basis of her complaint.   Based on the summary judgment record, the court concludes as a matter of law that Plaintiff is not a consumer. Beneficial is therefore entitled to judgment as a matter of law on Plaintiff's DTPA claim.

### G.    Intentional infliction of Emotional Distress

"The elements of intentional infliction of emotional distress are: '(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress that the plaintiff suffered was severe.'" *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 16  n.3 (Tex. 2008) (quoting *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000)).   "A defendant's conduct satisfies the second element only if it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"   *Kroger Tex., L.P. v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006) (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). "Conduct that is merely insensitive or rude is not extreme and outrageous, nor are 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Kroger Tex., L.P.*, 216 S.W.3d at 796 (quoting *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999)).   Because intentional infliction of emotional distress is a "gap-filler" tort, the plaintiff, in addition to the foregoing elements, must also establish that there are no

alternative causes of action that would provide a remedy for the severe emotional distress caused by the defendant's conduct.  *Kroger Tex. L.P.*, 216 S.W.3d at 796; *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005); *Hoffman–LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).  If there is an independent set of facts that would support a claim for intentional infliction of emotional distress, then the claim is not barred.  *Hoffman–La Roche*, 144 S.W.3d at 450. On the other hand, if plaintiff's intentional infliction of emotional distress claim is based on another tort, she cannot maintain an action for intentional infliction of emotional distress regardless of whether she chooses to assert the alternative claim, succeeds on the alternative claim, or the alternative claim is barred.  *Id.* at 447-48.

Beneficial contends that Plaintiff cannot satisfy any of the elements of intentional infliction of emotional distress.  Household contends that Plaintiff cannot and has not come forward with any evidence that its conduct was extreme or outrageous.  Household contends that its refusal to pay proceeds under a nonexistent policy does not qualify as extreme or outrageous.

Plaintiff did not respond to Beneficial's motion with respect to this claim.  In response to Household's claim, however, Plaintiff indicates that she waives this claim against Household. Plaintiff's intentional infliction of emotional distress claim against Household will therefore be dismissed.  The court also determines that Plaintiff's claim against Beneficial fails.

There is no evidence that Beneficial's conduct was extreme or outrageous, and Plaintiff's statement that she "suffered stress and depression" as a result of Beneficial's conduct is insufficient to show that her emotional distress was severe. Pl.'s App. 3 (Doc. 28-1).  More importantly, Plaintiff has not alleged an independent basis for her intentional infliction of emotional distress claim.  The

factual basis of such claim instead is the same as her other claims.  Plaintiff's intentional infliction of emotional distress claim against Beneficial is therefore factually and legally deficient and will be dismissed with prejudice.

###    H.    Unjust Enrichment

Plaintiff's unjust enrichment is pleaded in the alternative to her contract claim.  Defendants contend that there is no evidence that either of them has been unjustly enriched, and that Plaintiff's unsupported speculation in her response is not evidence.  Beneficial contends that it is undisputed that a mortgage existed between it and Plaintiff when this lawsuit arose, and Plaintiff acknowledges that she stopped making payments on the mortgage.  Defendants therefore assert that Plaintiff is the one who has been unjustly enriched because she acknowledges that she has continued to reside in the property at issue without making any mortgage payments.

Unjust enrichment is theory of liability, not an independent cause of action under Texas law. *Chapman v. Commonwealth Land Title Ins. Co.*, 814 F. Supp. 2d 716, 724-26 (N.D. Tex. 2011); *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009) ("[U]njust enrichment is a theory of liability that a plaintiff can pursue through several equitable causes of action, including money had and received."); *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. denied) ("[U]njust enrichment is not a distinct independent cause of action but simply a theory of recovery.").  Recover under the theory of unjust enrichment is limited to situations in which "one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."  *Heldenfels Brothers, Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

Even assuming that Plaintiff has a valid independent cause of action, she would not be

entitled to recover under the theory of unjust enrichment because she has not shown that Beneficial or Household obtained a benefit from her by fraud, duress, or taking of an undue advantage of her. In her summary judgment response, Plaintiff similarly contends and states in her declaration as follows:

> [After my husband's death], I continued paying the monthly mortgage. Then in 2010, I was informed that I was not on the mortgage. I repeatedly called Beneficial and sent Beneficial documents regarding my husband's death, but Beneficial would not respond or put me on the mortgage.  Since I was not on the mortgage and Beneficial refused to put me on the mortgage, I stopped making mortgage payments.

Pl.'s App. 2-3 (Doc. 28-1).  These statements by Plaintiff may serve as a defense or justification for her decision to stop making payments on the mortgage, but they do not support Plaintiff's contention that her continued payments and Defendants' acceptance of such payments were induced by fraud, duress, or the taking of an undue advantage; nor does the evidence support Plaintiff's contention that the insurance policy was wrongfully canceled without notice or reason.  While Plaintiff states in her declaration that the insurance policy was canceled without notice or reason, and that Defendants have not responded to her claim for benefits under the insurance policy, this alone is insufficient to raise a genuine dispute of material fact in response to Defendants' evidence that Plaintiff's insurance application was denied June 25, 2007.  In other words, Defendants' evidence establishes that no insurance policy existed, and, as a result, there was no policy to cancel and no policy under which a claim could be paid or denied.  Plaintiff has therefore failed to raise a genuine dispute of material fact that Defendants obtained a benefit from her through the use of fraud, duress, or the taking of an undue advantage.  Plaintiff's theory of unjust enrichment against Defendants therefore fails and will be dismissed with prejudice.

I.        **Statute of Limitations**

In addition to the foregoing arguments raised by Defendants, Household contends that all of Plaintiff's claims against it are barred by the applicable two and four-year statutes of limitation. Household contends that regardless of the labels used to package Plaintiff's claims against it, they all arise from one of two events: (1) Household's refusal to issue life insurance coverage on Plaintiff's husband's life, or (2) Household's failure to pay life insurance proceeds to Plaintiff after her husband died in 2008. Household asserts that Plaintiff filed this lawsuit on September 9, 2013, more than five years after her husband died and Plaintiff received notice that no life insurance policy existed. Household further asserts that, according to Plaintiff's Petition, she received notice in June 2008 that no life insurance policy existed, more than four years before the initiation of this suit. Household therefore contends that the facts alleged in the Petition demonstrate that Plaintiff's claims are time-barred under the applicable statutes of limitation.

Plaintiff disagrees and responds that the discovery rule tolled the accrual of her claims because she never received any written denial of her claim for insurance proceeds before April 24, 2012. Household replies that the discovery rule does not apply to contract claims. Household's Reply 3 (citing *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310,  314 (Tex. 2006)). Household also replies that the discovery rule does not save Plaintiff's remaining claims because she admits to discovering in June 2008 that no life insurance policy for her husband was issued. Household contends that if no policy issued, there can be no claim for a death benefit.

The statute of limitations for breach of contract is four years. *Stein v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). As Household correctly notes, the discovery rule does not apply to contract claims. *Via Net*, 211 S.W.3d at  314. A claim for breach of contract instead accrues when the

contract is breached.  *Id.*; *Stein*, 80 S.W.3d at 592. The statute of limitations for Texas Insurance

Code violations is two years.  Tex. Ins. Code § 541.162.  The statute of limitations for negligence

is two years.  Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a); *Texas Soil Recycling, Inc. v.*

*Intercargo Ins. Co.*, 273 F.3d 644, 649 (5th Cir. 2001).  The statute of limitations for unjust

enrichment is two years. *Verizon Employee Benefits Comm. v. Frawley*, 655 F. Supp. 2d 644, 647

(N.D. Tex. 2008), *aff'd*, 326 F. App'x 858 (5th Cir. 2009).  Likewise, the statute of limitations for

breach of the duty of good faith and fair dealing is two years.  *Provident Life & Acc. Ins. Co. v.*

*Knott*, 128 S.W.3d 211, 221 (Tex. 2003).

Plaintiff acknowledges that when she called Beneficial's main office in June 2008, she was

told that there was no life insurance policy.  Plaintiff nevertheless waited more than four years before

filing this action in state court on September 9, 2013.  Her claims against Household for breach of

contract, Insurance Code violations, negligence, unjust enrichment, and duty of good faith and fair

dealing are therefore barred by applicable statutes of limitations, fail as a matter of law, and will be

dismissed with prejudice.  Plaintiff waived her other claims against Household.  Accordingly, the

court need not address these claims.

### J.    Declaratory Judgment, Injunctive Relief, Accounting

Plaintiff requests a declaratory judgment that: (1) Defendants materially breached the Deed

of Trust and insurance policy; and (2)  "Defendants are attempting to wrongfully foreclose" on the

property at issue. Pl.'s Orig. Pet. ¶ 60.  Plaintiff also requests  "an accounting of all transactions on

their mortgage loan" and injunctive relief to prevent Beneficial from dispossessing her of the

property by foreclosure.   *Id.* ¶ 61, 66-68.  Beneficial contends that Plaintiff's request for a

declaratory judgment, injunctive relief, and an accounting should be denied and dismissed with

prejudice because she has not shown that she can prevail on any underlying claim.  Plaintiff responds that because her request for a declaratory judgment is not a cause of action, dismissal is not appropriate under Rule 56.

Plaintiff's request for declaratory relief was brought under the Texas Declaratory Judgment Act.  When a state-filed declaratory judgment action is removed to federal court, it is converted into an action brought under the federal Declaratory Judgment Act, 28 U.S.C § 2201. *Turner v. AmericaHomeKey. Inc.*, No. 11-CV-0860-D, 2011 WL 3606688, *5 n.11 (N.D. Tex. Aug. 16, 2011). Under the federal Declaratory Judgment Act, a federal court may declare the rights and legal relations of any interested party. The availability of a declaratory judgment depends upon the existence of an underlying judicially remediable right because the declaratory judgment is not itself a cause of action, only a form of relief the court may grant.  *See Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *Collin Cnty., Tex., v. Homeowners Ass'n for Values Essential to Neighborhoods*, *(HAVEN)*, 915 F.2d 167, 171 (5th Cir. 1990).  To be entitled to injunctive relief, Plaintiff must also show that she has an underlying claim for which she is likely to succeed on the merits.  *See Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761 (N.D. Tex. 2012) (setting forth federal standard applicable to temporary restraining orders and preliminary injunctions).  Here, the court has dismissed all of Plaintiff's underlying claims against Defendants, leaving nothing on which to base Plaintiff's requests for declaratory and injunctive relief.  Denial of Plaintiff's requests for declaratory and injunctive relief is therefore appropriate.

"An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action." *Watson v. CitiMortgage, Inc.*, 814 F. Supp. 2d 726, 737 (E.D. Tex. 2011) (quoting *Brown v. Cooley Enters., Inc.*, No. 3:11-CV-0124-D, 2011 WL 2200605,

at *1 (N.D. Tex. June 7, 2011).  Plaintiff's request for an accounting is sought as a remedy; however, as already explained, the court has determined that Plaintiff's claims against Defendants fail. Accordingly, the court cannot grant Plaintiff's request for an accounting.

For these reasons, the court **denies** Plaintiff's request for declaratory relief, injunctive relief, and accounting.

## V.      Conclusion

For the reasons herein set forth, no genuine dispute of material fact exists as to any of Plaintiff's claims, and Beneficial and Household are entitled to judgment as a matter of law. Accordingly, the court **grants** Beneficial Financial Inc.'s Motion for Summary Judgment (Doc. 17); **grants** Defendant Household Life Insurance Company's Motion for Summary Judgment (Doc. 7); and **dismisses with prejudice** this action.  The court also **denies** Plaintiff's request for declaratory relief, injunctive relief, and accounting.  The court will issue judgment by separate document as required by Rule 58 of the Federal Rules of Civil Procedure.

**It is so ordered** this 30th day of March, 2015.

Sam A. Lindsay
United States District Judge